IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOSHUA G. BELK,

                Plaintiff,                              ORDER

        v.                                          3:07-cv-00301-bbc

FEDERAL BUREAU OF PRISONS,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       This case started out as a seemingly straightforward application of previous rulings of this court, but it has quickly turned into a procedural quagmire. To put the issue before the court in context, I set out the story so far.

       Plaintiff Joshua Belk, a federal prisoner, brought this lawsuit under the Administrative Procedures Act, contending that 28 C.F.R. §§ 570.20 and 570.21 are invalid because they categorically deny prisoners the opportunity to be placed into a halfway house until the last 10% of their sentence, in violation of 18 U.S.C. § 3621(b). Following this court's previous decisions in <u>Tristano v. Federal Bureau of Prisons</u>, 07-C-189-C, 2004 WL 5284511 (W.D. Wis. 2007), and <u>Hendershot v. Scibana</u>, 04-C-291-C (W.D. Wis. 2004), I granted plaintiff's motion for a preliminary injunction in an order dated September 24, 2007. I directed

1

defendant "to consider plaintiff for transfer to a halfway house, using the criteria listed in 18 U.S.C. § 3621(b)."

After that, things got messy. On October 29, plaintiff moved to enforce the injunction, contending that defendant had failed to comply with the September 24 order because defendant had deferred consideration of plaintiff for a halfway house transfer until April 2008. In its response to plaintiff's motion, defendant conceded that it had deferred a decision. In an order dated December 5, 2007, I granted plaintiff's motion to enforce the injunction, telling defendant that if it believed it had authority to defer a decision, it should have moved to modify the order. I gave defendant until December 20 to inform the court whether it had complied with the September 24 order and, if not, to explain why it believed it had the authority to do so.

Two days before its response was due, defendant filed a "motion for clarification." Defendant still had not considered plaintiff for transfer to a halfway house. Heading in a completely different direction, defendant argued that plaintiff had not exhausted his administrative remedies on the question whether he was entitled to an *immediate* transfer to a halfway house. Rather, defendant said, his request during the grievance process was that he receive 180 days in a halfway house. Because plaintiff's current projected release date is not until March 2009, the time for considering plaintiff for a transfer is still months away. In light of defendant's new argument, I gave plaintiff an opportunity to weigh in on the

question whether he believed the court was without authority to order consideration for an immediate transfer in light of the scope of the grievances he filed.

Continuing the trend that defendant started, plaintiff's response failed to address the issue identified by the court. Instead, he argued that defendant was attempting to delay resolution of the case and was subjecting him to retaliation by inappropriately withdrawing money from his commissary account.

This brings us to the present. To begin with, plaintiff should know that I cannot address his allegations of retaliation in the context of this case. If he believes that employees of defendant are retaliating against him for exercising his constitutional right of access to the courts, he will have to file a new lawsuit.

Turning to defendant's argument, I agree that plaintiff was not seeking an immediate halfway house transfer during the grievance process. Instead he asked that his "prerelease preparation date" (the projected date for halfway house transfer) be moved from October 31, 2008, to September 15, 2008, so that he would have "a full 180 days" at a halfway house before his release. In his administrative appeals he continued to request "180 days" or "a full six months" of halfway house placement. Apparently, plaintiff wished to be considered under a previous policy, Program Statement 7310.4, under which prisoners could be considered for transfer to a halfway house for six months, even if that was more than 10% of their sentence.

3

By itself, a failure to request a particular remedy during the grievance process would not necessarily prohibit a plaintiff from asking for that relief in a lawsuit. The court of appeals explained this in Strong v. David, 297 F.3d 646, 649-50 (7th Cir. 2002): "[N]o administrative system may demand that the prisoner specify each remedy later sought in litigation—for Booth v. Churner, 532 U.S. 731 (2001), holds that § 1997e(a) requires each prisoner to exhaust a *process* and not a remedy." Thus, it was enough that plaintiff identified the problem, which was that defendant was acting illegally by categorically refusing to consider him for a halfway house transfer until the last 10% of his sentence.

The better argument in support of defendant's position is that plaintiff continued to frame his complaint in the same way in the context of this lawsuit, a fact I overlooked in framing the preliminary injunction. In his complaint, plaintiff repeats his request to be considered under the policy in existence "prior to December 2002," under which prisoners could be considered for halfway house placement for "six months." Nowhere in his complaint does he seek an immediate transfer to a halfway house. Presumably, plaintiff is aware of the scope of his request for relief, which is why he failed to address the merits of defendant's argument.

Because plaintiff did not request consideration for an immediate transfer in his complaint, I will vacate the September 24 order. The remaining question is what relief plaintiff may receive that is consistent with his complaint. He is not entitled to an order

4

directing defendant to consider him for a transfer at some date in the future. As defendant points out, any number of events could occur between now and then that would make such an order inappropriate, ranging from misconduct by plaintiff to a change in availability of an appropriate placement. This is a question of ripeness: "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296 (1998) (internal quotations omitted). In other words, I can issue an injunction only to the extent that defendant is violating his rights *now*.

The only way that defendant is currently applying 28 C.F.R. §§ 570.20 and 570.21 to plaintiff is in calculating his prerelease preparation date, which is the date that defendant has projected that plaintiff will be eligible for a halfway house transfer. Accordingly, I will preliminarily enjoin defendant to recalculate that date without reference to 28 C.F.R. §§ 570.20 and 570.21. If defendant believes there is any reason why the preliminary injunction should not be made permanent, it may have until February 8, 2008, in which to explain its reasons.

ORDER

IT IS ORDERED that

1. The order dated September 24, 2007, directing defendant Federal Bureau of

5

Prisons to consider plaintiff Joshua Belk for transfer to a halfway house is VACATED.

2. Defendant is directed to recalculate plaintiff's prelease preparation date in accordance with 18 U.S.C. § 3621(b) and without reference to 28 C.F.R. §§ 570.20 and 570.21.

3. Defendant may have until February 8, 2008, in which to show cause why a permanent injunction should not be issued enjoining it from using §§ 570.20 and 570.21 to determine whether a halfway house placement is appropriate for plaintiff.

4. If defendant does not respond by February 8, 2008, I will enter judgment in favor of plaintiff and direct the clerk of court to close this case.

Entered this 22d day of January, 2008.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge